[No. 27542-9-I.   Division One.   December 14, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES FLORA, *Petitioner.*

*Lembhard G. Howell* and *Lembhard G. Howell, P.S.,* for petitioner.

*Michael E. Rickert, Prosecuting Attorney,* and *Thomas E. Seguine, Deputy,* for respondent.

GROSSE, C.J. — James Flora appeals his conviction for recording a private conversation without both parties' consent in violation of RCW 9.73.030. The charge was brought after he attempted to record his arrest.

Flora is an African-American residing in Sedro-Woolley. Flora contends that on one occasion one of his neighbors called his daughters "nigger bitches" while the girls were playing in their front yard. The older of the two girls threw mud on the neighbor's car in retaliation. The police were summoned to arrest the girls for malicious mischief. When they arrived the girls became upset and Flora sent the younger one into the house, at which point he was arrested

for obstruction of justice. He maintains that he was handled roughly and called "nigger" during his arrest. His daughter was also arrested. The charges against Flora and his daughter were ultimately dismissed, but his neighbor obtained a restraining order against Flora and his family.

On September 20, 1989, Flora stood in the middle of the street in front of his neighbor's house and took pictures of a friend, Norma Sherrin, driving his car in front of his house. The neighbor, concluding that he was photographing her house and possibly violating the protective order as well, called the police.

The police officers who arrived, Luvera and Stubben, were the same ones involved in Flora's 1988 arrest. They informed Flora that his neighbor was complaining that he had approached her home and photographed it in violation of the protective order. Flora explained that he had been standing in the road in front of his neighbor's house, at a distance of over 20 feet as required in the order. He also told them he was taking pictures of his car in order to establish the distance of the car to his house for use in a different court matter. He offered to show the photographs to the police officers, but they refused. Instead, they arrested him for violating the restraining order. Flora was never convicted of that offense.

During his conversation with the officers, Flora and Sherrin entered the house to retrieve the protective order in order to show the officers that the limit was 20 feet rather than 25 feet. They not only brought out the order but a pile of other papers as well. Hidden among them was a small tape recorder. Flora maintains that he wanted to record the conversation because he feared the deputies would assault him and use racial slurs as they had done in the past. He explains that he felt particularly apprehensive because the officers refused to look at the pictures he had taken, pictures which, he thought, would prove he had not been photographing his neighbor's house.

When Flora and Sherrin came out of the house the officers proceeded with the arrest. The stack of papers was placed on the hood of the police car. After Flora was placed in the car, Sherrin picked up the papers and one of the officers saw the tape recorder. Sherrin was arrested and the tape recorder confiscated.

At trial, Flora testified that although the police officers made no verbal threats, their manner made him feel threatened.

Sherrin testified that she had driven Flora's car down the road while Flora photographed it, after which they left for a short time, and that they found the police officers waiting for them when they returned to Flora's house. She also testified that during her own arrest she was twisted and lifted off the ground.

The State charged Flora with recording his arrest, a private conversation, in violation of RCW 9.73.030. The matter was tried before a jury in district court. At the close of testimony, defense counsel made a motion to dismiss for failure to prove a prima facie case, arguing that the conversation did not qualify as private, and that there could be no cause of action on these facts. The court denied the motion and the jury proceeded to convict Flora. Flora made an unsuccessful appeal to the superior court. He now appeals to this court asserting that RCW 9.73.030 is unconstitutionally vague, that the court erred in failing to cure the constitutional infirmity by properly instructing the jury, and that the conversation recorded was not private. Because we hold that the conversation at issue was indeed not private, we do not reach Flora's other assignments of error. Flora contends the trial court erred in denying his motion to dismiss for failure to state a cause of action. We agree. RCW 9.73.030, the statute under which Flora was convicted, provides in pertinent part:

> **Intercepting, recording or divulging private communication — Consent required — Exceptions.** (1) Except as otherwise provided in this chapter, it shall be unlawful for any

individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:

. . . .

(b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

(2) Notwithstanding subsection (1) of this section, wire communications or conversations . . . (b) which convey threats of extortion, blackmail, bodily harm, or other unlawful requests or demands, . . . may be recorded with the consent of one party to the conversation.

The State urges us to adopt the view that public officers performing an official function on a public thoroughfare in the presence of a third party and within the sight and hearing of passersby enjoy a privacy interest which they may assert under the statute. We reject that view as wholly without merit.

■Determining whether a given matter is private requires a fact-specific inquiry. *See Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 190, 829 P.2d 1061 (1992) (citing *State v. Slemmer*, 48 Wn. App. 48, 52, 738 P.2d 281 (1987) and *State v. Forrester*, 21 Wn. App. 855, 861, 587 P.2d 179 (1978), *review denied*, 92 Wn.2d 1006 (1979)). Where the pertinent facts underlying the cause of action are undisputed, as here, the determination is one of law. *Kadoranian*, 119 Wn.2d at 190 (citing *Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 353, 779 P.2d 697 (1989)).

■■ Although the term "private" is not explicitly defined in the statute, Washington courts have on several occasions construed the term to mean:

secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly; not open or in public.

*Slemmer*, 48 Wn. App. at 52 (quoting *Forrester*, 21 Wn. App. at 861 (quoting *Webster's Third New International Dictionary* (1969))); *accord, State v. Bonilla*, 23 Wn. App. 869, 872,

598 P.2d 783 (1979). That definition is consistent with the Legislature's purpose in enacting the privacy act, to protect individuals from the dissemination of illegally obtained information. *State v. Fjermestad*, 114 Wn.2d 828, 834, 791 P.2d 897 (1990) (citing *State v. Wanrow*, 88 Wn.2d 221, 233, 559 P.2d 548 (1977)). Our Supreme Court has explained that the statute

> expresses a legislative intent to safeguard the *private conversations* of citizens from dissemination in any way. The statute reflects a desire *to protect individuals from the disclosure of any secret illegally uncovered by law enforcement.*

(Italics ours.) *State v. Fjermestad*, 114 Wn.2d at 836.

■ ■ The State advances no persuasive basis for its contention that the conversation between the officers and Flora should be considered private. We note in particular that in none of the cases it cites as controlling were public officers asserting a privacy interest in statements uttered in the course of performing their official and public duties. Rather, the question in those cases was whether the *personal* privacy of an individual was improperly invaded. *See State v. Cunningham*, 23 Wn. App. 826, 843-44, 598 P.2d 756 (1979), *rev'd*, 93 Wn.2d 823, 613 P.2d 1139 (1980); *State v. Grant*, 9 Wn. App. 260, 265, 511 P.2d 1013, *review denied*, 83 Wn.2d 1003 (1973), *cert. denied*, 419 U.S. 849 (1974); *State v. Caliguri*, 99 Wn.2d 501, 506, 664 P.2d 466 (1983); *State v. Wanrow*, 88 Wn.2d at 228-32. The State now urges us to distort the rationale of those cases to support the proposition that police officers possess a personal privacy interest in statements they make as public officers effectuating an arrest.

Our research into other legal sources, in which a literature on the notion of privacy may be said to exist, has produced no cases which support the State's position. In Fourth Amendment analysis, and tort theory, for example, the question whether a matter is private occasions a threshold inquiry into whether the matter at issue ought properly be entitled to protection at all:

> It is clear, however, that there must be something in the nature of prying or intrusion, . . . *It is clear also that the thing into which there is intrusion or prying must be, and be entitled to be, private.*

*Jeffers v. Seattle*, 23 Wn. App. 301, 315, 597 P.2d 899 (1979) (quoting W. Prosser, *Torts* 808 (4th ed. 1971)); *see also Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967).

The conversation at issue fails this threshold inquiry; the arrest was not entitled to be private. Moreover, the police officers in this case could not reasonably have considered their words private.[1] Because the exchange was not private, its recording could not violate RCW 9.73.030 which applies to private conversations only. We decline the State's invitation to transform the privacy act into a sword available for use against individuals by public officers acting in their official capacity. The trial court erred in denying Flora's motion to dismiss. Flora's conviction is reversed and the case dismissed.

COLEMAN and PEKELIS, JJ., concur.

---

[1] We note, incidentally, that the police officers testified at trial that they did not consider the conversation private.